# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| ALEA LONDON LIMITED, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 7:06-cv-34 (HL) |
| | : | |
| PATRICIA HOWARD, | : | |
| DALE HOWARD, | : | |
| RICHARD BAUMAN, and | : | |
| LANDMARK ASSOCIATES, INC. | : | |
| d/b/a LANDMARK REALTY, | : | |
| | : | |
| Defendants. | : | |

## ORDER

This matter is before the Court on the Joint Motion for Summary Judgment of Defendants Patricia Howard, Dale Howard, Richard Bauman, and Landmark & Associates, Inc. d/b/a Landmark Realty, and the Motion for Summary Judgment of Plaintiff, Alea London Limited, in this declaratory judgment action. After consideration, the Court hereby grants, in part, and denies, in part, the Motion of Defendants and grants, in part, and denies, in part, the Motion of Plaintiff, as more fully set forth below.

## Background

Richard Bauman operates an independent insurance agency with five offices in the Southeast. During the period in question here, Bauman also had a separate business, constructing homes for resale. In July 2005, Bauman purchased a piece

of property at 241 Crepe Myrtle Street, Moultrie, Georgia, with the intention of building a house on it for resale. Bauman served as the general contractor on the project. During the time that construction on the house was ongoing, Bauman purchased commercial property and general liability coverage from Tapco Underwriters, the managing general agent for Alea London Limited. The policy issued by Alea London, policy number ALTV012265, was in force at the time of the incident giving rise to this claim.

During the period that the policy was in force, Bauman listed the property with a real estate agency, Landmark & Associates, Inc. d/b/a Landmark Realty. While the house was still under construction, Landmark received an inquiry about the property from Patricia Howard. Ms. Howard spoke with Landmark agent Karen Johnson, who invited Ms. Howard to go out and tour the property. The next day, on September 27, 2005, Ms. Howard left work and stopped by the house. She entered the house alone, using the concrete blocks that had been placed at the front door to serve as steps. On the way out of the house, she fell when one of concrete blocks rolled forward as she was stepping on it.

According to Bauman, Karen Johnson found out about Ms. Howard's fall the next day. According to Johnson, Ms. Howard called her, said she had sprained her ankle, and also said she did not intend to file a claim. Bauman learned of the conversation shortly after the fall but did not notify Alea London of the incident at that time. He says that because of Ms. Howard's comments to Johnson, he did not

believe that a claim would be filed and, therefore, he did not need to notify the insurer of the incident.

Rather than sustaining a sprained ankle, Ms. Howard broke her leg in the fall. The break was very complicated, resulting in multiple surgical procedures, and prolonged hospital stays, and significant medical expenses. Ms. Howard and her husband, Dale, retained an attorney to represent them. On November 8, 2005, the Howards' lawyer sent Bauman a letter. On November 11, 2005, Bauman notified Alea London of the potential claim by contacting Tapco Underwriters.

On March 22, 2006, the Howards filed a lawsuit against Bauman and Landmark in the Superior Court of Lowndes County, Georgia. Landmark filed a cross-claim against Bauman, in which it alleged that under the terms of the listing agreement, Bauman agreed to hold Landmark harmless for injuries occurring on the property. Bauman requested defense and indemnity from Alea London under the policy of insurance he purchased. Alea London is defending Bauman under a reservation of rights. Alea London seeks from this court a declaration of its rights, duties and obligations under the policy. The underlying lawsuit has been stayed in the Superior Court of Lowndes County pending the outcome of this proceeding.

## Summary of the Motions

Following discovery, all Defendants jointly moved for summary judgment, seeking a determination that Alea London has a duty to defend and indemnify Bauman for the claims asserted by the Howards in superior court, and seeking a

3

determination that Bauman's notice of the injury was timely. In response, Alea London filed its own motion for summary judgment, among other things, seeking a determination that it has no duty to defend and indemnify Bauman.

In support of their motion for summary judgment, Defendants rely on contract construction principles. They argue that the policy covers claims for bodily injury and that there are no exclusions that would operate to deny coverage. Alea London, on the other hand, contends that an exclusion contained in the policy, the construction operation exclusion, bars coverage for the claim, and further contends the contractual liability exclusion bars coverage for Landmark's claims against Bauman under the hold harmless clause in the listing agreement. Alea London also argues that it has no duty to indemnify because Bauman failed to provide timely notification of the claim.

## Summary of the Insurance Contract

On September 1, 2005, Defendant Bauman submitted an application for insurance on the Crepe Myrtle Street property. Based on the application, Tapco Underwriters issued Policy Number ALTV012265. The policy was effective for a three-month period, from September 1, 2005, to December 1, 2005, and carried a premium of $504.40. Review of the disputed insurance contract shows the declarations page as consisting of two parts: Section I, Property, described as builder's risk basic coverage and having a coverage amount of $120,000; and Section II, described as commercial general liability, and having a coverage amount

of $500,000.

Section I, the builder's risk coverage form, provides for coverage as follows: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations [241 Crepe Myrtle St.] caused by or resulting from any Covered Cause of Loss." The builder's risk coverage requires the insured to give the insurer prompt notice of loss or damage, and to give a description of how, when, and where the damage occurred as soon as possible. Covered causes of loss include fire, lightning, explosion, windstorm or hail, and smoke. Loss exclusions include earth movement, governmental action, and nuclear hazard. Special exclusions include contractual liability, which is explained as follows: "We will not defend any claim or 'suit,' or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement."

Section II, the commercial general liability policy, provides coverage for bodily injury. However, pursuant to a policy exclusion, coverage does not apply to contractual liability, which is defined as, "'Bodily injury or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The policy conditions require an insured to notify the insurer of an occurrence as soon as practicable. The commercial general liability policy also provides an exclusion for construction operations. The construction operations exclusion provides as follows: "It is agreed & understood that coverage is hereby excluded for any loss or damage arising out of or in any way relating to

5

construction, renovation, remodeling or repair being performed at or upon the insured premises."

## The Construction Operations Exclusion

Alea London's first argument is that the construction operations exclusion bars coverage as to the claims at issue here. Alea London contends that the injury suffered by Patricia Howard when she fell on the makeshift stair at the Crepe Myrtle property constitutes "loss or damage arising out of or . . . relating to construction, renovation, remodeling or repair being performed at or upon the Insured premises." In other words, according to Alea London, because the makeshift stairs were put in place to enable construction workers to enter and exit the premises, a fall on the stairs resulted directly from construction on the premises, and coverage would be barred by the construction operations exclusion.

Defendants contend the exclusion must be construed differently, and that it "only operates to exclude those injuries sustained during the active, ongoing construction operations." (Defs.' Br. Supp. Mot. Summ. J. at 9.) They maintain, therefore, that because there "was no construction actively being performed at the insured premises when Ms. Howard's injury occurred," there was no construction being performed, as contemplated by the language of the insurance contract.

Alea London maintains that Defendants' interpretation is too narrow, in that it fails to take into account the "arising out of" and "in any way relating to" language contained in the construction operations exclusion. Alea London contends these

6

phrases should be read broadly, requiring the Court to apply a "but for" test to "determine the root cause of the injury and lawsuit." (Pl.'s Br. Supp. Mot. Summ. J. at 18-19.) Alea London argues that applying the "but for" test demands a finding that Ms. Howard's injury occurred because the steps upon which she fell were in place to enable construction workers to enter the premises.

The Court declines to accept Alea London's arguments, however, and agrees with Defendants that Alea London's interpretation of the construction operations exclusion would, in effect, "swallow the contract." Here, where the policy at issue applied specifically to a house under construction, the phrase "loss or damage arising out of or . . . relating to construction" is "so confusing that an average person could not make out the boundaries of the coverage." Isdoll v. Scottsdale Ins. Co., 466 S.E.2d 48, 50 (Ga. Ct. App. 1995). As a result, there is an ambiguity in the policy. Id. at 50. As a general rule, where there is an ambiguity in an insurance policy, the contract must be construed against the drafter. Thus, in the usual case, the contract would be construed against Alea London as the drafter, and Ms. Howard's injury would be covered under the terms of the policy. Alea London argues that this is not the usual case, however.

Alea London contends that because Bauman had significant experience in the insurance industry, he should be treated as a "sophisticated insured" and the Court "should apply the intent of the parties and not gratuitously give Bauman insurance coverage." (Pl.'s Reply Br. Supp. Mot. Summ. J. at 8.) Alea London contends that

7

because Bauman was aware of the different risks assumed under different policies he could have obtained broader coverage, if he so desired.  Alea London also suggests that Bauman could have negotiated a more favorable policy, one that did not include the exclusion at issue here.  (Pl.'s Reply Br. Supp. Mot. Summ J. at 9 n.25.)  Alea London maintains that because Bauman is a sophisticated party, the policy should be construed in a manner consistent with the intent of the parties, which the Court should ascertain by looking at parol evidence.  (Pl.'s Br. Supp. Mot. Summ. J. at 27-28.)  Alea London concedes this argument presents "a novel question in Georgia."  (Pl.'s Br. Supp. Mot. Summ. J. at 28.)

This Court does not agree with Alea London that it should treat Bauman as a sophisticated party based on his experience in the insurance industry.  Those courts that have applied the sophisticated party rule in contract interpretation have applied it to "large corporations, advised by counsel and having equal bargaining power," First St. Underwriters Agency of New Engl. Reins. Corp. v. Travelers Ins. Co., 803 F.2d 1308, 1311-12 (3d Cir. 1986), a definition that does not apply to Bauman in spite of his extensive knowledge of the insurance industry.  *See also* Eagle Leasing Corp. v. Hartford Fire Ins. Co., 540 F.2d 1257, 1261 (5th Cir. 1976) (refusing to construe the policy against the insurer "when the insured is not an innocent but a corporation of immense size, carrying insurance with annual premiums in six figures, managed by sophisticated business men, and represented by counsel on the same professional level as the counsel for insurers"); Am. Home Assur. Co. v. Merck &

Co., Inc., 386 F. Supp. 2d 501, 512 (S.D.N.Y. 2005) (applying the First State definition of sophisticated party and noting that Merck & Co. supplied some of the critical language in the disputed policy). Therefore, the Court will construe the policy against Alea London as the drafter of the policy.

In view of the foregoing, the Court denies the Motion for Summary Judgment of Alea London insofar as it seeks a declaration that it has no duty to defend Bauman for the claims of the Howards under the insurance contract issued by it. The Court grants the Motion for Summary Judgment of Defendants insofar as it seeks a declaration that the terms of the policy do not exclude the claims of the Howards.

## **The Contractual Liability Exclusion**

Having concluded that the ambiguity as to coverage should be construed against Alea London, the Court must consider Alea London's next argument, which is that pursuant to the terms of the contractual liability exclusion, Alea London has no duty to defend and/or indemnify Bauman for any claims by Landmark arising out of the underlying state court lawsuit. Defendant Bauman, whose briefs have been filed jointly with those of Landmark Realty, did not respond to this issue when it was raised by Alea London in its brief in support of its Motion for Summary Judgment. Thus neither Bauman nor Landmark Realty have offered argument in opposition to Alea London's contractual liability exclusion theory. After review of the contract language, the Court finds that summary judgment is appropriate for Alea London on

9

this issue.

The Property section of the insurance contract, Section I, includes the following special exclusion: "We will not defend any claim or 'suit,' or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement." The Commercial General Liability section, Section II, has a separate section for Exclusions, which provides, in part, as follows: "This insurance does not apply to: 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

The listing agreement entered into by Bauman and Landmark includes a section entitled "Limits on Broker's Authority and Responsibility." Subsection G of that section provides: "Seller acknowledges and agrees that Broker . . . shall be held harmless from any and all claims, causes of action, or damages arising out of or relating to . . . any injury to persons on Property and/or loss of or damage to Property or anything contained therein." It thus appears that Bauman, as the seller on the listing agreement, assumed liability for injuries to those persons entering the Crepe Myrtle property to view it. It further appears that by assuming liability for such injuries in the listing agreement, those injuries are excluded from coverage under the insurance contract. Thus, any liability that Bauman might have as a result of the cross-claim against him by Landmark, would be excluded from coverage under the terms of the policy issued by Alea London. And, therefore, Alea London has no duty

to defend and/or indemnify Bauman for those claims asserted in the cross-claim by Landmark against Bauman. The Court thus grants the Motion for Summary Judgment of Alea London insofar as it seeks judgment as a matter of law as to its duty to defend Bauman for any claims brought against Landmark that were assumed by Bauman under the terms of the listing agreement.

## The Notice Issue

Defendants seek a determination as a matter of law that Bauman's notice of the claim to Alea London was timely. Alea London contends that the issue of timeliness is one for the jury.

In the section of the insurance contract entitled "Commercial General Liability Coverage Form" there is a subsection entitled "Commercial General Liability Conditions," which outlines "Duties in the Event of Occurrence, Offense, Claim or Suit" and states: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." It is undisputed that Bauman did not notify Alea London of Patricia Howard's injury when he became aware of it, which was shortly after September 27, 2005. Instead, Bauman notified Alea London of the injury on November 11, 2005, after he received a letter from the Howards' lawyer. Thus, Bauman provided notice approximately 45 days after the occurrence. Bauman contends this notice is sufficient as a matter of law.

In arguing that the notice provided by Bauman was reasonable, Defendants rely on the language of the contract which provides that Alea London should be

"notified as soon as practicable of an occurrence or an offense which may result in a claim." Defendants contend that because Patricia Howard told Karen Johnson that she would not be filing a claim as a result of her accident, notice was not required in September because there was no "occurrence or offense which may result in a claim" at that time. They argue it was not until after the Howards' attorney made contact that notice was required. Defendants maintain that because Bauman gave notice "within three days of his first notice of a *potential claim*" notice was reasonable. (Defs.' Br. Supp. Joint Mot. Summ. J. at 16 (emphasis added).)

Defendants' argument is disingenuous, at best. Certainly, it overlooks another significant aspect of the contract that bears on the notice issue: the definition of "occurrence." Section V of the Commercial General Liability Coverage Form defines occurrence to mean "an accident." Patricia Howard's fall from the concrete blocks stacked in front of the house on Crepe Myrtle Street would appear to be the epitome of an accident, and thus an "occurrence" that would trigger the notice requirement, irrespective of the assertions she may have made to Karen Johnson about the filing of a claim. Certainly an insured with the experience that Bauman had in the insurance field should have known that an accident, even one with potentially minor injuries, presents the potential for a claim, and certainly Bauman should have known that an insurance company would want information related to that claim sooner, rather than later.

The general rule in Georgia is that questions as to the adequacy or timeliness

of notice, as well as the merit of an insured's justification regarding failure to give notice, are issues of fact to be determined by a jury because they are not susceptible to summary adjudication as a matter of law. Allstate Ins. Co. v. Walker, 562 S.E.2d 267, 268 (Ga. Ct. App. 2002). The general rule is just that, however, a general rule, and there may be times when the question of notice may be decided as a matter of law: "An unexcused significant delay in notifying an insurer about an incident or lawsuit, however, may be unreasonable as a matter of law." Id. at 268. In Allstate, for example, the Court of Appeals of Georgia held that a one-year delay in providing notice to the insurer of a theft of a vehicle was an unexcused significant delay as a matter of law.

Despite this Court's own skepticism as to the timeliness of notice and the insured's justifications as to the delay, the Court cannot say as a matter of law that the delay in notice was either unexcused or unreasonable. Moreover, Alea London has not asked for judgment as a matter of law as to this issue but, rather, argues that it presents a jury issue. The Court agrees with Alea London and finds that the question of the timeliness of notice is to be determined by a jury. Therefore, the Motion for Summary Judgment of Defendants is denied insofar as it seeks judgment as a matter of law on the issue of whether Bauman provided timely notice of a potential claim to Alea London.

## Conclusion

The Court finds that the incident giving rise to the claims here is covered

under the terms of the disputed insurance contract. Accordingly, Defendants are entitled to judgment as a matter of law on the issue of coverage, and their Motion for Summary Judgment is granted, in part. Alea London's Motion for Summary Judgment is denied as to this issue. The Court finds that Alea London is entitled to a determination that it has no duty to defend Bauman for any claims brought against Landmark that were assumed by Bauman under the terms of the listing agreement, and Alea London's Motion for Summary Judgment is granted as to this issue. Finally, the Court finds that issues of timeliness of notice and justification as to delay in giving notice are matters to be determined by a jury. Defendants are not entitled to a determination of these issues as a matter of law, and their Motion for Summary Judgment is denied as to the issue of notice. The Calendar Clerk is directed to set this matter for trial at the next available term of court.

**SO ORDERED**, this the 12th day of March, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON**

mls